**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| BROWSERKEY, LLC, | § | Case No. |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| UBS AG and | § | |
| UBS FINANCIAL SERVICES INC., | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff BrowserKey, LLC ("BrowserKey" or "Plaintiff") for its Complaint against UBS
AG and UBS Financial Services Inc. (collectively, "UBS" or "Defendants") alleges as follows:

**THE PARTIES**

1.      BrowserKey is incorporated under the laws of the State of Texas, with a place of
business located at 101 East Park Boulevard, Suite 600, Plano, Texas 75074.

2.      Upon information and belief, Defendant UBS AG is a corporation organized and
existing under the laws Switzerland, with a place of business at  Bahnhofstrasse 45, CH-8001
Zurich, Switzerland. Upon information and belief, UBS may be served via the Hague Convention.

3.      Upon information and belief, Defendant UBS Financial Services Inc. is a
corporation organized and existing under the laws of Delaware, with a place of business at 1200
Harbor Boulevard, Weehawken, New Jersey 07086 and with additional regular and established
places of business in this District at least at: 7250 Dallas Parkway 12th Floor, Plano, Texas 75024.
Upon information and belief, UBS Financial Services, Inc. is a wholly-owned subsidiary of UBS
AG. Upon information and belief, UBS Financial Services Inc. may be served with process via its

registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.      This Court has specific and personal jurisdiction over UBS Financial Services Inc consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, UBS Financial Services Inc has sufficient minimum contacts with the forum because UBS Financial Services Inc has physical locations and transacts substantial business in the State of Texas and in this Judicial District. Further, UBS Financial Services Inc has, directly or through subsidiaries or intermediaries, committed acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

6.      This Court has specific and personal jurisdiction over the UBS AG consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, UBS AG has sufficient minimum contacts with the forum because UBS AG transacts substantial business in the State of Texas and in this Judicial District. Further, the UBS AG has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas, and places its products and/or services, including those accused herein of infringement, into the stream of commerce which terminates in the Judicial District of the Eastern District of Texas, as alleged more

particularly below. For example, on information and belief, the Accused Products are available for download via the Apple App Store.

7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because the UBS AG is a foreign company that may be sued in any Judicial District, including the Eastern District of Texas. UBS AG is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, the UBS AG through its own acts and/or through the acts of each other, UBS AG makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

8.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). UBS Financial Services Inc is registered to do business in Texas and, upon information and belief, UBS Financial Services Inc has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has regular and established places of business in this Judicial District as set forth above. UBS Financial Services Inc is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, UBS Financial Services Inc through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.



[1]

---

[1] https://www.google.com/maps/place/UBS+Financial+Services+Inc./@33.0775542,-97.0596478,11z/data=!3m1!5s0x864c20e078adae7b:0x4c0d0ee5b2348214!4m10!1m2!2m1!1sUBS+Texas!3m6!1s

## U.S. PATENT NO. 7,249,262

9.      On July 24, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,249,262 (the "'262 Patent," or "Patent-in-Suit") entitled "Method For Restricting Access To A Web Site By Remote Users." A true and correct copy of the '262 Patent can                        be                    found                    here: http://patentimages.storage.googleapis.com/68/33/24/2fff1acb1bc022/US7249262.pdf.

10.     BrowserKey is the sole and exclusive owner of all right, title, and interest to and in the '262 Patent, and holds the exclusive right to take all actions necessary to enforce its rights to the '262 Patent, including the filing of this patent infringement lawsuit. BrowserKey also has the right to recover all damages for infringement of the '262 Patent as appropriate under the law.

## INFRINGEMENT ALLEGATIONS

11.     The '262 Patent generally covers a method of restricting access to data maintained on a server computer by one or more authorized, networked client machines. The technology was developed by Leon E. Hauck and Brent J. Burval. This technique is incorporated into web and mobile applications made by numerous banking institutions, including UBS.

12.     UBS has manufactured, used, marketed, distributed, sold, offered for sale, exported from, and imported into the United States, products that infringe the '262 Patent. These Accused Products include at least all versions and variants of the UBS Web and Mobile Applications since 2019. The Accused Products include at least all versions and variants of the UBS Mobile Banking Applications   which   have   supported   any   biometric,   token-based,   and/or   passwordless

0x864c2139f41e059f:0xc82f2f11675c38a1!8m2!3d33.0775707!4d-
96.8235516!15sCglVQlMgVGV4YXMiA4gBAZIBFGZpbmFuY2lhbF9jb25zdWx0YW50qgFPCgkvbS8wMzFFyeH
AKCC9tLzA3Yl9sEAEqByIDdWJzKAAyHhABIhrfjsCKwUrptzK17K7Y0MWfQ_f9ajc0vYbiMjINEAIiCXVicyB
0ZXhhc-
ABAA!16s%2Fg%2F1tlndvmb?entry=ttu&g_ep=EgoyMDI1MDQyMy4wIKXMDSoJLDEwMjExNjQwSAFQAw
%3D%3D

authentication. For example, the Accused Products comprise at least the UBS Financial Services Application (a.k.a., UBS Mobile App or UBS Mobile Application), UBS Mobile Pass, UBS Neo, and UBS Neo FX for iOS, iPadOS, and Android, including all supporting servers, computer systems, and infrastructures, since at least 2019.

13.     BrowserKey has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '262 Patent.

14.     Upon information and belief, UBS has had knowledge and notice of the Patent-in-Suit, and its infringement thereof, since they were issued. UBS, as a bank, regularly monitors ways to secure their mobile and web application, and upon information and belief, monitored or was otherwise aware of Plaintiff's patented inventions, including due to their impact on UBS and UBS's competitor's security systems. Alternatively, to the extent that UBS avoided actual knowledge of the Patent-in-Suit, and its infringement thereof, it was willfully blind. Upon information and belief, to the extent it lacked actual knowledge of infringement, UBS deliberately avoided learning of infringement, despite subjectively believing that there was a high probability that it infringed Plaintiff's patents, and specifically the Patent-in-Suit. Upon information and belief, UBS has adopted a policy or practice of not reviewing the patents of others, including those related to UBS's specific industry and of Plaintiff in particular, thereby remaining willfully blind to the Patent-in-Suit. Upon information and belief, UBS lacks written policies disseminated to employees regarding monitoring or avoidance of patent infringement by UBS and lacks mechanisms for employees to report patents which they believe UBS may infringe. Upon information and belief, UBS and its employees understood that there was a high likelihood that patents filed on innovations by Plaintiff read on the Accused Products.

## COUNT I
### (Infringement of the '262 Patent)

15.     Paragraphs 1 through 14 are incorporated by reference as if fully set forth herein.

16.     BrowserKey has not licensed or otherwise authorized UBS to make, use, offer for sale, sell, or import any products that embody the inventions of the '262 Patent.

17.     UBS has and continues to directly infringe the '262 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '262 Patent. These products include at least all versions and variants of the UBS Web and Mobile Applications.

18.     For example, UBS directly infringes at least claim 1 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of restricting access to data maintained on a server computer by an authorized client machine, said method comprising the steps of: a. installing a client-side software program on the client machine for generating a client machine-specific identifier, the client machine-specific identifier being substantially unique to the particular machine upon which such client-side software program is initially installed; b. operating the client-side software program on the client machine to generate the client machine-specific identifier; c. generating a password remote from the client machine and providing the password to a user of the client machine, the password being derived from the client machine-specific identifier generated in step b., and uniquely corresponding thereto; d. issuing a request by the client machine to the server computer for access to data maintained on the server computer; e. responding to the request for access of step d. by having the client machine re-generate its machine-specific identifier; f. verifying on the client machine whether the client machine-specific identifier re-generated in step e. uniquely

corresponds with the password generated in step c.; and g. recognizing the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is true, and refusing to recognize the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is false.

19.    The Accused Products practice a method of restricting access to data maintained on a server computer by an authorized client machine. For example, upon information and belief, on client machines running the UBS Mobile Application variant for Apple iOS, one method by which an operator may sign in to access UBS's "protected URLs," as a UBS account holder, is via Apple's Touch and Face ID (locally compared "biometrics"). This biometric process authorizes the client machine to access restricted data on UBS server(s).



# Access App biometric login

Log in to Digital Banking using facial or fingerprint recognition on the Access App – a secure and convenient alternative to using your PIN.

20.     The Accused Products practice a method of installing a client-side software program on the client machine for generating a client machine-specific identifier, the client machine-specific identifier being substantially unique to the particular machine upon which such client-side software program is initially installed. For example, a client-side software program (e.g., the UBS Mobile Application) is installed on the client machine (e.g., a phone running UBS's Mobile Application), and generates a client machine specific identifier (e.g., a device key, certificate, public/private key pair, and/or other cryptographic material). Upon information and

---

2 https://www.ubs.com/sg/en/wealthmanagement/digital-banking/access-app/_jcr_content/mainpar/toplevelgrid_6891254/col1/actionbutton_copy_co.0995683774.file/PS9jb250ZW50L2Rh bS9hc3NldHMvd20vZ2xvYmFsL2d3bS1kaWdpdGFsL2FwYWMvYmlvbWV0cmljLWVuLnBkZg==/biometric-en.pdf

belief, each such identifier is unique to the client machine upon which such client-side software program is initially installed (e.g., to an instance of UBS's Mobile Application running on a specific client machine).

21.    The Accused Products further practice a method of operating the client-side software program on the client machine to generate the client machine-specific identifier. For example, upon launch of the UBS Application, the UBS servers verify that a client application adapted to calculate a machine specific identifier with a machine specific key (e.g., a UBS Application configured to calculate a signature, device key, certificate, public/private key pair, and/or other cryptographic material based on cryptographic and/or seed material of a machine-specific identifier provided to the client by the server within a policy or registration request) exists on the client device (e.g., is installed), or provides that client application to the device (e.g., by triggering an update or transmission to the UBS Application).

22.    The Accused Products further practice a method of generating a password remote from the client machine and providing the password to a user of the client machine, the password being derived from the client machine-specific identifier generated in step b, and uniquely corresponding thereto. For example, upon information and belief, the UBS servers generate a password (e.g., a nonce, token, cryptographic key, certificate, cryptogram, signed nonce, and/or other cryptographic material) derived from a client machine-specific identifier generated on the client machine (e.g., by applying a signature or transform based on a seed value to a private key and/or device keys associated with, and/or generated based on material from, the secure element of the device). The UBS servers then provide that password to the client machine (e.g., by transmitting the password to a smartphone running the UBS Application via HTTP protocol). For example, upon information and belief, that password, is either stored inside, or wrapped in

encryption provided by, a secure element/secure enclave/secure execution environment of the mobile device running the UBS Application. Upon information and belief, the seed value, signature, and/or algorithm are also stored inside or wrapped in encryption provided by that secure element/secure enclave/secure execution environment.

23.    The Accused Products further practice a method of issuing a request by the client machine to the server computer for access to data maintained on the server computer. For example, UBS servers receive a request (e.g., an HTTP request) from a client machine (e.g., a smartphone running the UBS Mobile Application) for access to data stored on a server (e.g., account information stored on a server) when the application is launched. For example, when first launching the UBS Mobile Application, upon information and belief, a user agent requests a protected URL associated with UBS.

24.    The Accused Products further practice a method of responding to the request for access of step d. by having the client machine re-generate its machine-specific identifier and verifying on the client machine whether the client machine-specific identifier re-generated in step e. uniquely corresponds with the password generated in step c. For example, upon information and belief, when biometric authentication is enabled on the UBS Mobile Application, the UBS servers transmit instructions to re-generate the password (e.g., the seed value and algorithm that can be applied to the nonce, token, device key, public key, and/or key pair to generate a matching password and/or signed nonce), and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b (e.g., by utilizing fingerprint, face, or iris recognition to authenticate a user, thereby granting access to the secure element-protected password, and applying same to the seed value and algorithm to the public key, nonce, signature, and/or key pair to verify that it matches the one transmitted by the server). For

example, upon information and belief, when the client machine supports Apple Touch / Face ID, and the UBS Mobile Application has been provisioned to sign in to UBS online services via Touch / Face ID, UBS computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the app is launched.

25.     The Accused Products further practice a method of recognizing the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is true, and refusing to recognize the client machine as being authorized to access data maintained on the server computer if the verification performed by step f. is false. For example, if the sign in on the client machine is successful, access to data maintained on UBS server(s) is authorized by UBS. If the client machine is not signed in, access to data maintained on UBS server(s) is denied by UBS.

26.     For example, UBS directly infringes at least claim 11 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method of restricting access to data maintained on a server computer by an authorized client machine, said method comprising the steps of: a. creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine; b. transmitting to the client machine the session identifier created in step a.; c. storing the session identifier transmitted in step b. within the client machine; d. verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer; e. obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d.; f. transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c.; g. comparing the session identifier transmitted in step f. with the session

identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized; and h. permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized.

27.     The Accused Products practice a method of restricting access to data maintained on a server computer by an authorized client machine. For example, upon information and belief, on client machines running the UBS Mobile Application variant for Apple iOS, one method by which an operator may sign in to access UBS's "protected URLs," as a UBS Account holder, is via Apple's Touch and Face ID (locally compared "biometrics").



28.    The Accused Products further practice a method creating a session identifier in a computer remote from the client machine for a current browsing session of the client machine. For example, upon information and belief, UBS server computer(s) create one or more session identifiers, remote from the client machine, when a new user agent session on the client machine initially requests, via the HTTP protocol, a UBS "protected URL." For example, upon information and belief, a UBS server creates a session identifier (e.g., a static or dynamic session ID, token, and/or certificate) upon successful access by a client device running the UBS Mobile Application.

---

[3] https://www.ubs.com/sg/en/wealthmanagement/digital-banking/access-app/_jcr_content/mainpar/toplevelgrid_6891254/col1/actionbutton_copy_co.0995683774.file/PS9jb250ZW50L2Rh bS9hc3NldHMvd20vZ2xvYmFsL2d3bS1kaWdpdGFsL2FwYWMvYmlvbWV0cmljLWVuLnBkZg==/biometric-en.pdf

Further, upon information and belief, when first launching the UBS Mobile Application, a user agent requests UBS URLs. In response to the request, one or more name-value pair(s) are created by the UBS server(s).

29.    The Accused Products further practice a method of transmitting to the client machine the session identifier created in step a. Upon information and belief, UBS transmits the session identifier(s) to the client machine via the Internet. Session identifier(s) are transmitted by the UBS HTTP server computer(s) to the client machine via one or more HTTP response headers and/or HTTP response bodies. For example, upon information and belief, a UBS server transmits the session identifier (e.g., a static or dynamic session ID, token, and/or certificate) to a client machine (e.g., a phone running the UBS Mobile App) upon initiating of the log-in process. Upon information and belief, this session identifier is stored in secure memory associated with the UBS Mobile App, and used to identify the session by a client device (e.g., phone running the UBS Mobile App) in subsequent communications and request/response processes with the UBS server for the duration of a browsing session. Upon information and belief, each such communication includes at least one name-value pair, comprising of at least one session identifier.

30.    The Accused Products further practice a method of storing the session identifier transmitted in step b. within the client machine. Upon information and belief, per instructions from UBS servers and/or UBS computer code, the web browser stores the session identifier(s) on the client machine. Upon information and belief, such instructions are transmitted in the form of code, automatically executed by the UBS App, and/or by a browser operated based on computer instructions by the UBS App. For example, upon information and belief, the UBS Mobile App further stores the identifier in a client device (e.g., a phone), in secure memory associated with the application.

- Data our server automatically records when you visit UBS Websites e.g., your IP address, the website from which you visit us, the type of browser software used, the UBS Website pages that you actually visit including the date and the duration of your authentication information; [4]

31.     The Accused Products further practice a method of verifying, on the client machine, that the client machine is authorized to access data maintained on the server computer. Upon information and belief, when the client machine supports Apple Touch / Face ID, and the UBS Mobile Application has been provisioned to sign in to UBS online services via Touch / Face ID, UBS computer code automatically prompts the operator to sign in via Touch / Face ID immediately after the application is launched. For example, upon information and belief, the UBS Mobile Application verifies that a user is authorized to access data maintained on a UBS server by locally authenticating and/or validating that its Session ID shows a user is logged in. For example, the UBS Mobile App locally verifies that it is authorized to access data maintained on the UBS servers by authenticating an operator's biometric information.

---

[4]

https://www.ubs.com/global/en/legal/privacy/users/_jcr_content/root/contentarea/mainpar/toplevelgrid/col_1/linklist /link.0460889602.file/PS9jb250ZW50L2RhbS9hc3NldHMvY2MvZ2xvYmFsL2xlZ2FsL2RvYy9wcml2YWN5LW 5vdGljZS93ZWJzaXRlLXNvY2lhbC1tZWRpYS1jb29raWUtcHJpdmFjeS1ub3RpY2UtZW4ucGRm/website-social-media-cookie-privacy-notice-en.pdf



32.     The Accused Products further practice a method of obtaining the session identifier stored in step c., and storing such session identifier within a storage table remote from the client machine if such client machine was verified in step d. Upon information and belief, the UBS Web Application is an extension or related to a remote UBS storage table storing session identifier(s). For example, upon information and belief, once an operator has logged into the UBS Mobile App using biometric authentication, the UBS server system obtains the session identifier from the UBS Mobile App client, e.g., through a request/response in which the client confirms local verification

---

[5] https://www.ubs.com/sg/en/wealthmanagement/digital-banking/access-app/_jcr_content/mainpar/toplevelgrid_6891254/col1/actionbutton_copy_co.0995683774.file/PS9jb250ZW50L2RhbS9hc3NldHMvd20vZ2xvYmFsL2d3bS1kaWdpdGFsL2FwYWMvYmlvbWV0cmljLWVuLnBkZg==/biometric-en.pdf

of biometric information. Upon information and belief, the UBS server then stores the session identifier in a table within secure memory associated with the server, where it is used to address transmission of data to the client.

33.    The Accused Products further practice a method of transmitting a request by the client machine for access to data maintained on the server computer, such request including the session identifier stored in step c. Upon information and belief, per instructions from UBS servers and/or UBS computer code, upon successful sign in, the user agent is automatically redirected to the default UBS Mobile Application page (a UBS "Protected URL") which invokes one or more HTTP requests. The HTTP request(s) are transmitted by the client machine and such request(s) include session identifier(s) to overcome limitations of the stateless HTTP protocol. For example, upon information and belief, the UBS Mobile App running on a client machine (e.g., a phone) transmits requests for access to data maintained on the server computer (e.g., to UBS brokerage and/or bank account data maintained on the UBS server system). Upon information and belief, all request/response communications once the log-in process is initiated, including for such account data, include the session identifier.

34.    The Accused Products further practice a method of comparing the session identifier transmitted in step f. with the session identifier stored in the storage table during step e. to determine whether the request for access transmitted in step f. is authorized. Upon information and belief, UBS compares session identifier(s) remotely. For example, when session cookies (which store session identifier(s)) are deleted from the client machine, the client machine is no longer logged in and no longer able to access UBS "Protected URLs." Upon information and belief, the UBS servers further compare the session identifier transmitted by a UBS Mobile App with the corresponding identifier stored in a storage table to determine whether the request for access (e.g.,

to a brokerage and/or bank account) is authorized (e.g., whether the user logged in based on biometric information presented to the UBS Mobile App).

35.    The Accused Products further practice a method of permitting access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is authorized, and denying access by the client machine to the requested data maintained on the server computer if the comparison made in step g. shows that the request for access is not authorized. Upon information and belief, if the client machine is signed in, access to data maintained on UBS server(s) is authorized by UBS. If the client machine is not signed in, access to data maintained on UBS server(s) is denied by UBS. For example, upon information and belief, the UBS servers permit access by a client machine to the requested data maintained on the server computer (e.g., access to a brokerage and/or bank account by the UBS Mobile App) if the comparison made in step g. shows that the request for access is authorized (e.g., that the user has logged in based on authentication of biometric information), or deny access (e.g., fail to return access to requested brokerage and/or bank account information) if the comparison shows that the request is not authorized (e.g., a user's log-in was not successful).

36.    For example, UBS directly infringes at least claim 14 of the '262 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, perform operations for restricting access to data maintained on a server computer, the method comprising: a. receiving a request from a client machine for access to data stored on a server; b. generating a password remote from the client machine, and providing the password to the client machine or to a user of the client machine, the password being derived from, and corresponding to, a client machine-specific identifier generated

on the client machine; c. transmitting to the client machine instructions to re-generate the password and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b.; and d. allowing access to the data if the verification performed by step c. is true, and denying access to the data if the verification performed by step c. is false.

37.    Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, perform operations for restricting access to data maintained on a server computer, the method comprising the functionality of claim 14. For example, UBS's servers supporting the UBS Mobile Application include a computer program product tangibly embodied in an information carrier (e.g., a software program running in memory) including instructions which, when executed, perform operations for restricting access to a user's account information via the UBS Mobile Application as recited below, e.g., by allowing access via biometric authentication.

38.    Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs receiving a request from a client machine for access to data stored on a server. For example, UBS servers receive a request (e.g., an HTTP request) from a client machine (e.g., a smartphone running the UBS Mobile Application) for access to data stored on a server (e.g., account information stored on a server) when the application is launched. For example, when first launching the UBS Mobile App, upon information and belief, a user agent requests a protected URL associated with UBS. Such requests are received by UBS servers responsible for restricting access to account data. Upon information and belief, each such communication includes at least a name-value pair.

39.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs generating a password remote from the client machine, and providing the password to the client machine or to a user of the client machine, the password being derived from, and corresponding to, a client machine-specific identifier generated on the client machine. For example, the UBS servers generate a password (e.g., a nonce, cryptographic key, public key, certificate, cryptogram, token, and/or other cryptographic material) derived from a client machine-specific identifier generated on the client machine (e.g., by applying a transform based on a seed value to a private key and/or device keys associated with or protected by the secure element of the device). The UBS servers then provide that password to the client machine (e.g., by transmitting the password to a smartphone running the UBS Mobile Application via HTTP protocol). Upon information and belief, that password, is either stored inside, or wrapped in encryption provided by, a secure element/secure enclave of the mobile device running the UBS Mobile Application. The seed value and algorithm are also stored inside or wrapped in encryption provided by that secure element/secure enclave.

40.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs transmitting to the client machine instructions to re-generate the password and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b. For example, upon information and belief, when biometric authentication is enabled on the UBS Mobile App, the UBS servers transmit instructions to re-generate the password (e.g., the seed value and algorithm that can be applied to the nonce, token, device key, public key, and/or key pair to generate a matching password and/or

signed nonce), and to verify, on the client machine, whether the client machine-specific identifier uniquely corresponds with the password generated at step b. (e.g., by utilizing fingerprint, face, or iris recognition to authenticate a user, thereby granting access to the secure element-protected password, and applying the seed value and algorithm to the public key, nonce, signature, and/or key pair to verify that it matches the one transmitted by the server).

41.     Each Accused Product comprises a computer program product tangibly embodied in an information carrier, the computer program product including instructions that, when executed, performs allowing access to the data if the verification performed by step c. is true, and denying access to the data if the verification performed by step c. is false. For example, if the sign in on the client machine is successful, access to data maintained on UBS server(s) is authorized by UBS. If the client machine is not signed in, access to data maintained on UBS server(s) is denied by UBS.

42.     UBS indirectly infringes one or more claims of the '262 Patent by knowingly and intentionally inducing others, including UBS customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the UBS Web and Mobile Applications.

43.     UBS indirectly infringes one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as UBS's customers and end-users, in this District and elsewhere in the United States. For example, UBS's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '262 Patent. UBS induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused

Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of UBS's inducement, UBS's customers and end-users use Accused Products in a way UBS intends and directly infringe the '262 Patent. UBS performs these affirmative acts with knowledge of the '262 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '262 Patent.

44.    UBS indirectly infringes one or more claims of the '262 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. UBS's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '262 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '262 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by UBS to be especially made or adapted for use in the infringement of the '262 Patent. UBS performs these affirmative acts with knowledge of the '262 Patent and with intent, or willful blindness, that they cause the direct infringement of the '262 Patent.

45.    UBS's infringement of the '262 Patent is willful, at least because it has knowingly and deliberately infringed the '262 Patent.

46.    BrowserKey has suffered damages as a result of Defendants' direct and indirect infringement of the '262 Patent in an amount to be proved at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, BrowserKey prays for relief against UBS as follows:

a.      Entry of judgment declaring that UBS has directly and/or indirectly infringed one or more claims of the '262 Patent;

b.      Entry of judgment declaring that UBS's infringement of the '262 Patent is willful;

c.      An order awarding damages sufficient to compensate BrowserKey for Defendants' infringement of the '262 Patent, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d.      Entry of judgment declaring that this case is exceptional and awarding BrowserKey its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

e.      An accounting for acts of infringement;

f.      Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

g.      Such other and further relief as the Court deems just and proper.


Dated: April 30, 2025                          Respectfully submitted,

                                               /s/ Vincent J. Rubino, III
                                               Alfred R. Fabricant
                                               NY Bar No. 2219392
                                               Email: ffabricant@fabricantllp.com
                                               Peter Lambrianakos
                                               NY Bar No. 2894392
                                               Email: plambrianakos@fabricantllp.com
                                               Vincent J. Rubino, III
                                               NY Bar No. 4557435
                                               Email: vrubino@fabricantllp.com

Jacob Ostling
NY Bar No. 5684824
Email: jostling@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

**ATTORNEYS FOR PLAINTIFF
BROWSERKEY LLC**